# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ROBERT LOUIS CLARK, | : |
| Plaintiff, | : |
| v. | :    Case No. 5:23-cv-00005-MTT-AGH |
| Doctor COWENS,[1] | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Dr. Kenneth Cowens's motion for summary judgment (ECF Nos. 31). For the following reasons, it is recommended that Defendant's motion be granted.

## PROCEDURAL BACKGROUND

Plaintiff brought this action under 42 U.S.C. § 1983 claiming he failed to receive proper medical treatment at Macon State Prison ("MSP") in Oglethorpe, Georgia. 2nd Recast Compl. 5, ECF No. 8. Specifically, Plaintiff alleges that Dr. Fye and Defendant did not treat his Hepatitis B and bi-polar disorder.[2] *Id.* at 6.

After the Court denied Defendant's motion to dismiss, premised on Plaintiff's failure to disclose prior litigation, (ECF Nos. 20, 25, 28), Defendant filed a motion for summary judgment (ECF No. 31). Plaintiff filed a response to the motion for

---

[1] Defendant Cowens's name appears to be incorrectly spelled on the docket of this case. The Clerk is **DIRECTED** to correct Defendant Cowens's name. *See* Cowens Answer 1, ECF No. 22.

[2] Dr. Fye was dismissed at the preliminary screening stage. *See* Order & R., Apr. 26, 2023, ECF No. 10; Order, May 24, 2023, ECF No. 17 (adopting Order & R. and dismissing Dr. Fye).

summary judgment (ECF No. 34), to which Defendant filed a reply (ECF No. 35).[3] Defendant's motion is ripe for review.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and

---

[3] Plaintiff also filed an unauthorized surreply (ECF No. 36). Despite being unauthorized, the Court considered the arguments asserted therein.

present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. *Id.* at 324-26. This evidence must consist of more than conclusory allegations. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. Consideration of Defendant's Statement of Material Facts and Plaintiff's Response

As required by the local rules, Defendant filed a statement of material facts with specific citations to the record. ECF No. 31-1; *see also* M.D. Ga. L.R. 56 (requiring the party moving for summary judgment to file a numbered statement of material facts supported by specific citation to the record). The local rules also require a non-movant to respond to each fact with "specific citation" to the record showing that there is a "genuine dispute to be tried." M.D. Ga. L.R. 56. Each fact not specifically responded to "shall be deemed to have been admitted[.]" *Id.*

Although Plaintiff was advised of these rules, *see* ECF No. 32, he failed to comply. Plaintiff responded to Defendant's statement of facts, but he did not do so by citation to the record for several facts. Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 34. Thus, the Court will consider certain facts as admitted.

However, in considering the merits of a motion for summary judgment, a court must "review all of the evidentiary materials submitted in support of the motion for summary judgment." *United States v. One Piece of Real Prop. Located at 5800 SW*

3

*74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). In other words, the Court cannot simply accept the facts stated in a moving party's statement of material facts as true but must also review the movant's citations to the record and confirm that there are no issues of material fact. *Id.* at 1103 n.6.

### III. Factual Background and Prior Litigation

Plaintiff claims that he has Hepatitis B and a mental health condition that MSP doctors did not treat and that this lack of medical care violates the Constitution. He filed three federal actions asserting these claims. *See Clark v. Fye*, No. 5:18-cv-00071-MTT-MSH (M.D. Ga.) ("*Clark I*"); *Clark v. Cowens*, No. 5:21-cv-00110-TES-CHW (M.D. Ga.) ("*Clark II*"). The Court granted summary judgment to the defendants in the first case, finding in relevant part that Plaintiff did not have Hepatitis B and that he received treatment for his mental health issues. *Clark I* Order & R., Jan. 13, 2020, ECF No. 85; *Clark I* Order, Mar. 2, 2020, ECF No. 92 (adopting as modified Jan. 13, 2020 Order & R.). The Court dismissed the second case because Plaintiff refused to be deposed. *Clark II* Order & R., June 24, 2022, ECF No. 39; *Clark II* Order, Sept. 6, 2022, ECF No. 43 (adopting June 24, 2022 Order & R.). In this third case, Plaintiff again contends that a MSP doctor did not treat his Hepatitis B or his bi-polar disorder, which Plaintiff now refers to as PTSD. The medical record, however, shows that Plaintiff does not have Hepatitis B, that he received testing and diagnostic procedures for Hepatitis A, B, and C, and that he is being treated for his mental health disorder. After Defendant moved for summary judgment, Plaintiff attempted to move the goal posts by claiming that he had

4

Hepatitis C. As discussed below, Defendant is entitled to summary judgment.

### A. Plaintiff's Allegations

In his second recast complaint, the controlling complaint for purposes of this case, Plaintiff contends that he has Hepatitis B, that Defendant wholly failed to treat his Hepatitis B, and that he will die from cirrhosis of the liver if he does not receive treatment. 2nd Recast Compl. 6-7, ECF No. 8. Plaintiff also alleges that he has not been treated for his PTSD, which he alternatively refers to as bi-polar disorder. *Id.*

In his response and surreply, Plaintiff attempts to amend his contentions to assert a claim for failure to treat Hepatitis C. In his response, Plaintiff claims that his serious medical condition is Hepatitis C, not Hepatitis B. Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, ECF No. 34. In his surreply, Plaintiff contends that he has "Hepatitis B/C not just C." Pl.'s Surreply to Def.'s Mot. for Summ. J. 1, ECF No. 36. Plaintiff's second recast complaint, however, plainly alleges Hepatitis B, not Hepatitis C. 2nd Recast Compl. 5-7. Plaintiff also testified that he is suing about Hepatitis B. Pl.'s Dep. 22:13-16, ECF No. 31-3. Regardless, Plaintiff may not amend his complaint in response to a motion for summary judgment without first seeking leave to do so pursuant to Federal Rule of Civil Procedure 15(a). *See Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013). Plaintiff has not sought leave to amend his complaint further, and the Court would not grant such a request at this late stage and based on these facts.

5

## B. Plaintiff's Testimony

In his deposition, Plaintiff testified that he is not a doctor, and that he has no medical training. Pl.'s Dep. 6:7-9, 7:19-20.[4] Plaintiff asserts, however, that he can read medical charts and reports. *Id.* at 45:6-7, 52:6-9. Plaintiff states that he received a Hepatitis B diagnosis in 1995. *Id.* at 25:3-18. He contends that an unnamed female doctor performed a test on him, and the test came back positive for hepatitis. *Id.* at 22:17-25. Plaintiff also clarified that he considers his bi-polar disorder and PTSD "one and the same, because they both are really depressing."[5] *Id.* at 28:22-29:7.

### i. *Hepatitis Diagnosis*

Plaintiff testified that he met Defendant in 2018 to early 2019. Pl.'s Dep. 38:9-15. He states that he last saw Defendant in the beginning of 2019. *Id.* at 46:6-9. Plaintiff spoke to Defendant on more than twenty occasions. *Id.* at 40:3-5. According to Plaintiff, he has not received treatment for his Hepatitis B. *Id.* at 39:13-17. Plaintiff acknowledged that tests showed his liver "is all right," but he "know[s]" his body and he's not as energetic as he was twenty-five to twenty-eight years ago. *Id.* at 50:7-14. Plaintiff seeks a series of shots as treatment for his alleged Hepatitis B. *Id.* at 27:16-23.

---

[4] For accuracy, the Court cites to the actual page and line number of Plaintiff's deposition, not to the page number assigned by the Court's Case Management/Electronic Case Files system.

[5] For convenience, given Plaintiff's testimony, the Court refers to Plaintiff's mental health issue as simply PTSD.

Plaintiff mentions Hepatitis C only twice in his deposition—both in reference to one blood test result. He states that he received blood work at MSP and that that blood work came back positive for "hep B and hep C, both." Pl.'s Dep. 44:8-45:4. He then avers that the results of the same test showed a "positive reaction to hep and positive reaction to hep C . . . both of them." *Id.* at 45:14-16. As discussed below, however, while the medical record shows that Plaintiff was infected with Hepatitis C at some point in the past, there is no evidence to suggest that Plaintiff has an active Hepatitis C infection.

### ii. PTSD Treatment

Plaintiff testified that Defendant told him that he would need to see a mental health provider for treatment of that condition. Pl.'s Dep. 41:19-24. Plaintiff takes several medications for his PTSD "faithfully ever since" 2019, when he was diagnosed with that condition. *Id.* at 33:21-34:23. While Plaintiff acknowledges that he is receiving treatment every ninety days, he asserts that his PTSD medication is not effective. *Id.* at 12:23-13:5.

### C. Medical Records

The uncontested medical evidence in the record consistently shows that Defendant and/or medical personnel at MSP responded to Plaintiff's complaints about his alleged Hepatitis B infection and PTSD. For his alleged Hepatitis B infection, he received diagnostic testing which consistently showed he did not have that virus. He similarly received treatment for his PTSD. The medical records show the following:

7

>> *i.    Hepatitis Treatment Summary*

On August 8, 2018, a doctor ordered a hepatitis panel for Plaintiff. Pl.'s Med. R. 198, 274, ECF No. 31-5. On November 19, 2018, Plaintiff denied any significant medical history, and he asserted that he had anemia and GERD. *Id.* at 415. On November 21, 2018, a doctor again ordered a hepatitis panel. *Id.* at 197. On December 12, 2018, a hepatitis diagnostic test did not detect any Hepatitis A or B viral DNA. *Id.* at 313-14, 334. That test indicated that Plaintiff "had some Hepatitis C antibodies but no detectable Hepatitis C RNA in his blood, indicating that he did not have an active Hepatitis C infection but might have had one in the past." Cowens Am. Decl. ¶ 5, ECF No. 33-1; *see also* Pl.'s Med. R. 313. On December 19, 2018, the doctor ordered a liver ultrasound consult, and on May 22, 2019, a liver fibrosis test returned negative results for scarring or inflammation of the liver. Pl.'s Med. R. 196, 310, 332, 375; *see also* Cowens Am. Decl. ¶ 6. On April 15, 2021, a doctor ordered another liver ultrasound and hepatitis panel.[6] *Id.* at 187, 352. And on May 26, 2021, MSP received the results of another Hepatitis C screening which showed no

---

[6] The record suggests that Defendant was acting in a supervisory capacity, rather than directly providing treatment to Plaintiff. For example, on April 15, 2021, Defendant is listed on the consultation request form as the Site Medical Director, while another doctor requested the liver ultrasound. Pl.'s Med. R. 352. Defendant also declares that he was the Medical Director at MSP for at least part of the relevant time in this matter. Cowens Am. Decl. ¶ 2. While Defendant did not move for summary judgment on this ground, the Court notes that supervisory officials are not liable under § 1983 on the basis of respondeat superior or supervisory liability. Supervisors are liable under § 1983 only if they personally participate in the constitutional violation, direct their subordinates to act unlawfully, or know their subordinates will act unlawfully but fail to stop them. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *see also Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation.").

8

active infection. Pl.'s Med. R. 286-87; Cowens Am. Decl. ¶ 7. On February 3, 2023, Plaintiff requested treatment for Hepatitis B. Pl.'s Med. R. 15. Despite being told that labs needed to be drawn to determine treatment, Plaintiff refused to have labs drawn. *Id.*

### ii. PTSD Treatment Summary

On March 1, 2018, a MSP counselor referred Plaintiff for mental health services because he was "very depressed about being in the cell lockdown for eight days." *Id.* at 482. On January 7, 2022, a mental health practitioner prescribed Plaintiff Prozac and Zyprexa. *Id.* at 224, 431. During March and April 2022, the medical staff regularly provided Plaintiff with both medications. *Id.* at 427-28. On September 1, 2022, Plaintiff was again prescribed Prozac. Pl.'s Med. R. 175. On March 13, 2023, Plaintiff filed a health services request form complaining that one of his mental health medications was not working, but he did not attend his appointment on March 27, 2023. *Id.* at 65. On March 30, 2023, he was again referred to mental health. *Id.*

### D. Plaintiff's prior cases regarding these same facts

During his deposition, Plaintiff acknowledged that this federal action is the "third time" he brought the currently pending claims, but only one prior case is relevant to this discussion.[7] *Id.* at 9:12-17. On February 26, 2018, Plaintiff filed a federal action against Dr. Fye, alleging that Dr. Fye failed to treat Plaintiff's

---

[7] Plaintiff's second federal complaint raising the issues he asserts here was dismissed because Plaintiff refused to be deposed. *See Clark v. Cowens*, No. 5:21-cv-00110-TES-CHW, ECF No. 43 (M.D. Ga. Sept. 6, 2022).

9

Hepatitis B and bi-polar disorder. *See Clark v. Fye*, No. 5:18-cv-00071-MTT-MSH (M.D. Ga.), ECF No. 1. Ultimately, the Court granted Dr. Fye summary judgment, finding that Dr. Fye was not deliberately indifferent to Plaintiff's Hepatitis B because: (1) Plaintiff first alleged that he had Hepatitis B <u>after</u> Dr. Fye retired; and, (2) more importantly, Plaintiff did <u>not have</u> Hepatitis B, so Dr. Fye could not have been deliberately indifferent to a condition that Plaintiff did not have. *Clark v. Fye*, No. 5:18-cv-00071-MTT-MSH, 2020 WL 2482119, at *8-9 (M.D. Ga. Jan. 13, 2020), *adopted in relevant part by* 2020 WL 999754 (M.D. Ga. Mar. 2, 2020). The United States Court of Appeals for the Eleventh Circuit dismissed Plaintiff's appeal, in part, because "he was not entitled to an injunction requiring the Warden to provide medical care for a disease he does not have." *Clark v. Fye*, No. 20-11020-E, 2020 WL 3260710, at *1 (11th Cir. May 11, 2020).

### IV.  Deliberate Indifference Standard

"The [E]ighth [A]mendment, which applies to the states through the [F]ourteenth [A]mendment, prohibits the infliction of cruel and unusual punishment . . . . [S]tates violate the [E]ighth [A]mendment if they are deliberately indifferent to a prisoner's serious medical needs[.]" *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1571-72 (11th Cir. 1985) (internal citations omitted). In order to prove a claim of deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The first prong is an objective inquiry, requiring the

plaintiff to prove an "objectively serious medical need." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (internal quotation marks and citations omitted).

The second prong is a subjective inquiry, which the Eleventh Circuit recently modified. To establish the subjective component of deliberate indifference, a plaintiff

> must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat . . . that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk."

*Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839, 844-45 (1994)).[8] "[M]edical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Dang*, 871 F.3d at 1280 (quotation marks omitted). Moreover, "a simple difference in medical

---

[8] While Defendant did not argue the *Wade* standard, further briefing is not required on this point because Plaintiff fails to rebut even the lower standard argued by Defendant. *See* Def.'s Br. in Supp. of Mot. for Summary J. 6, ECF No. 31-2 (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).

11

opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

## V. Defendant's Motion for Summary Judgment

Defendant asserts multiple grounds for summary judgment. First, Defendant contends Plaintiff's claims are barred by the statute of limitations. Second, Defendant asserts that Plaintiff cannot show Defendant was deliberately indifferent because: (1) issue preclusion bars Plaintiff from relitigating his Hepatitis B claim; (2) Plaintiff does not have Hepatitis B; (3) Defendant was not responsible for diagnosing or treating mental health conditions at MSP; and (4) Plaintiff received treatment for his PTSD. Def.'s Br. in Supp. of Mot. for Summ. J. 4-9, ECF No. 31-2. Defendant also argues that he is entitled to qualified immunity. *Id.* at 9-10.

As discussed below, the Court agrees that summary judgment should be granted in Defendants favor for three reasons. First, Defendant does not treat mental health conditions, and Plaintiff received treatment for his PTSD. Second, Plaintiff does not have Hepatitis B, and he received testing for any hepatitis infection. Finally, Defendant is entitled to qualified immunity.[9]

### A. Plaintiff received treatment for PTSD from a mental health professional at MSP

It is uncontested in the record that Defendant does not diagnose or treat mental health conditions and that Defendant referred Plaintiff to a mental health

---

[9] Because the Court finds Defendant is entitled to summary judgment on these grounds, the Court does not address Defendant's other arguments.

12

provider. Cowens Am. Decl. ¶ 9, ECF No. 33-1; Pl.'s Dep. 41:19-24, ECF No. 31-3. Further, Plaintiff acknowledges that he is and has been consistently receiving treatment for his PTSD. Pl.'s Dep. 33:21-34:23. Courts are reluctant to find violations of the Eighth Amendment when a prison inmate has received medical care, as Plaintiff acknowledges he does for his PTSD. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). And while Plaintiff alleges the medication he receives is not working, even if the treatment was poor, the Eighth Amendment does not require medical care to be "perfect, the best obtainable, or even very good." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harris*, 941 F.2d at 1510). As the Eleventh Circuit has reminded district courts:

> [i]t bears repeating that deliberate indifference is <u>not</u> a constitutionalized version of common-law negligence. To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that "the deliberate indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence," and is in fact akin to "subjective recklessness as used in the criminal law[.]"

*Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) (citations omitted) (second alteration in original). Since Defendant is neither the diagnosing nor the treating physician for Plaintiff's mental health care and since Plaintiff is receiving mental health treatment, Defendant is entitled to summary judgement on this claim.

### B.   Plaintiff does not have a serious medical need

As explained above, "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Dang,* 871 F.3d at 1280 (internal quotation marks and citations omitted). The evidence here shows,

for the second time, that Plaintiff does not have Hepatitis B. Two blood panels returned negative results for any Hepatitis B infection—one on December 12, 2018 and one on May 6, 2021. Pl.'s Med. R. 291, 314, ECF No. 31-5. The documentation submitted by Plaintiff in his response shows the same: the December 12, 2018 panel shows Plaintiff did not have Hepatitis B. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. B, ECF No. 34-2. Plaintiff also submitted a declaration from his sister which avers that Plaintiff has Hepatitis B. Harmon Decl., ECF No. 34-4. But her statements rely solely on information Plaintiff told her—she has no independent knowledge of whether Plaintiff has Hepatitis B. Harmon Decl. As a result, Plaintiff has not demonstrated that there is a question of fact as to whether he has a serious medical condition related to Hepatitis B.

Further, Defendant reasonably responded to Plaintiff's assertions that he did have a serious medical need—namely hepatitis—to determine if he actually had that medical need and whether that medical need required treatment. The uncontested evidence shows that MSP provided Plaintiff with multiple diagnostic procedures such that he cannot show deliberate indifference to his non-existent hepatitis infection. In addition to the hepatitis panels, Plaintiff was referred for a liver fibrosis test and a liver ultrasound, and he acknowledges that those tests showed his liver was normal. Pl.'s Med. R. 196, 310, 352, 375; Pl.'s Dep. 50:7-14. In summary, multiple tests found that Plaintiff (1) did not have Hepatitis B, and (2) did not have active Hepatitis B or C infections and that, consequently, no treatment was necessary. Accordingly, the Court recommends that Defendant be granted summary judgment on Plaintiff's

14

hepatitis claim.

## C. Assuming Plaintiff did establish a constitutional violation, Defendant is entitled to qualified immunity

Defendant also argues that he is entitled to qualified immunity. Def.'s Br. in Supp. of Mot. for Summ. J. 9-10. In the alternative, the Court recommends that Defendant's motion be granted on this ground.

Qualified immunity acts as a shield for government officials from liability for acts committed during their discretionary duties, "unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation[.]" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). "In order to receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Once the defendant shows he was acting within his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply. *Lee*, 284 F.3d at 1194; *Courson v. McMillian*, 939 F.2d 1479, 1488-89 (11th Cir. 1991).

It is undisputed in this case that Defendant was acting within the scope of his discretionary duties and pursuant to the performance of those duties in his interaction with Plaintiff. *See Glasscox v. Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018), *abrogated on other grounds by Gilmore v. Ga. Dep't of Corr.*, -- F.4th --, No. 23-10343, 2024 WL 3559728 (11th Cir. July 29, 2024); *see also Johnson v. Fee*, 838 F.

15

App'x 394, 398 (11th Cir. 2020) (finding prison officers were acting within the scope of their discretionary authority considering the "general nature" of their actions). Thus, the burden shifts to Plaintiff to show Defendant is not entitled to qualified immunity. To meet his burden, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks and citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[10]

"A right can be clearly established in one of three ways." *Gilmore*, 2024 WL 3559728, at *10 (quotation marks omitted). A plaintiff "must point to either (1) 'case law with indistinguishable facts,' (2) 'a broad statement of principle within the Constitution, statute, or case law,' or (3) 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Id.* (quoting *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021)). In the Eleventh Circuit, "binding decisions of the Supreme Court of the United States," the Eleventh Circuit, and the Supreme Court of Georgia provide the relevant case law. *Id.*

As explained above, Defendant did not violate Plaintiff's Eighth Amendment rights. Thus, Plaintiff fails to overcome qualified immunity on this basis alone. Even if Plaintiff established a violation of his rights, the Court found no case which suggests that a physician may be found liable for failing to treat a non-existent

---

[10] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *Pearson*, 555 U.S. at 236; *McCullough*, 559 F.3d at 1205.

disease, especially when that physician provided testing and diagnostic measures for the non-existent disease in response to complaints from the prisoner about the non-existent disease.[11] Neither can Plaintiff show a broad, applicable principle, or that Defendant's actions—continuing to test and attempt to diagnose Plaintiff's alleged hepatitis—is conduct so egregious that Plaintiff need not point to case law. Hence, even if Plaintiff could show a constitutional violation, Defendant is still entitled to qualified immunity and his motion for summary judgment should be granted.

## CONCLUSION

For the reasons explained above, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (ECF No. 31) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28

---

[11] The Court recognizes that the medical records show that Plaintiff had Hepatitis C at one time. *See, e.g.*, Pl.'s Med. R. 313, 286. However, the record also shows that Plaintiff did not have an active Hepatitis C infection, and that he was also provided with diagnostic measures related to his prior Hepatitis C infection on a regular basis. *See, e.g.*, *id.* at 287 (no evidence of active Hepatitis C infection), 310 (negative liver fibrosis test), 318 (Hepatitis C genotype not detected).

17

U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 6th day of August, 2024.

                                           s/ *Amelia G. Helmick*
                                         UNITED STATES MAGISTRATE JUDGE